UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

METCAST SERVICE TECH RESOURCES, INC.,
MARCUS DOERING,

                    Plaintiffs,

            v.                           Case No. 11-C-0813

ROSLER METAL FINISHING USA, LLC,

                      Defendant.

---

AMENDED DECISION AND ORDER GRANTING MOTION TO DISMISS (DOC. 4)

Metcast Service Tech Resources, Inc. and Marcus Doering filed this lawsuit in Waukesha County Circuit Court. Rosler Metal Finishing USA, LLC removed the case to this court and then asked that this case be dismissed based on a forum selection clause.

Rosler, a Michigan limited-liability company with its principal place of business in Battle Creek, Michigan (Doc. 1, Ex. 1, Compl. (hereafter "Compl.") ¶ 3), is the "leading supplier of surface finishing equipment and consumables in the world" (Compl. ¶ 7). Rosler's products include mass finishing and shot blast equipment. (Compl. ¶ 8.) Its facilities are in Battle Creek, Michigan, and, formerly, in Adrian, Michigan. (Visger Aff. ¶ 4.) No Rosler facilities or operations are in Wisconsin. (Visger Aff. ¶ 5.) Moreover, Rosler has no sales offices or sales employees in Wisconsin (Visger Aff. ¶ 5), although it has a Sales Manager designated for Wisconsin (Compl. ¶ 11). Rosler maintains an interactive website, which is accessible in Wisconsin, promotes its products in Wisconsin, and invites business inquiries in Wisconsin. (Compl. ¶¶ 9-10.)

Marcus Doering was hired by Rosler right out of college, on or about August 23, 2006, as a design engineer of shot blasting machines. (Compl. ¶ 20; Visger Aff. ¶ 7.) Doering received a mechanical engineering degree in 2006 from a university in Germany. (Visger Aff. ¶ 6.) Doering's primary responsibility at Rosler was the design of custom shot blast equipment with integrated material handling systems. (Visger Aff. ¶ 7.)

When Doering began his employment at Rosler he signed a Noncompetition and Confidentiality Agreement (the "Agreement"). (Visger Aff. ¶ 8.) The Agreement was executed by Doering in Michigan. (Visger Aff. ¶ 8.) It provides that

> [d]uring the term of [Doering]'s employment and for a period of 2 years after that employment ends, [Doering] will not compete in any way with the business of the Company in the North American Market. This promise not to compete includes, but is not limited to, a promise that [Doering] will not engage in any of the following activities:
> a. [Doering] will not work with, for, or have any interest in, any organization that competes with the Company.
> b. [Doering] will not attempt to persuade any customer, supplier, or potential customer or supplier of the Company that they should not do business with the Company, should reduce their purchases of the Company's products or services, or should do business with a competitor of the Company.
> c. [Doering] will not sell or aid in the sale of any products or services that are competitive with any services or products of the Company to any customer or potential customer of the Company.
> d. [Doering] will not solicit, encourage or persuade any employee of the Company to terminate their employment with the Company or to take any action that adversely affects their ability to carry out their employment duties with the Company.

(Compl. ¶ 16; Visger Aff. Ex. 2. ¶ 2.) A choice of law and forum selection clause in the Agreement states:

> This Agreement shall be governed in all respects by Michigan law. The parties agree that any dispute arising under this Agreement shall be filed, heard, and decided in either the Circuit Court for the County of Calhoun, or the U.S. District Court for the Western District of Michigan, Southern

> Division. The parties agree that they will be subject to the personal jurisdiction and venue of either court, regardless of where [Doering] or the Company may be located at the time any action may be commenced.

(Compl. ¶ 19; Visger Aff. ¶ 8, Ex. 2.)

Doering lived in Michigan from 2006 to 2009. (Visger Aff. ¶ 11.) Then, from approximately August 2009 until his resignation, Doering lived in Maryland and commuted to and from Michigan for his employment at Rosler. (Visger Aff. ¶ 12; Compl. ¶ 21.) During his employment at Rosler, Doering did not live in Wisconsin, visit Wisconsin, or perform any job duties in Wisconsin. (Visger Aff. ¶ 10.) All of Doering's duties for Rosler's facilities were performed in Michigan. (Visger Aff. ¶ 10.) Doering resigned from Rosler as of June 1, 2011. (Compl. ¶ 24.) At the time of the resignation letter, he lived in Silver Spring, Maryland. (Visger Aff. ¶ 13.)

Metcast is a Wisconsin corporation with a principal place of business in New Berlin, Wisconsin. (Compl. ¶ 1.) It supports shot blast equipment directly or indirectly through business affiliates. (Compl. ¶ 28.) Metcast offered Doering employment beginning June 2, 2011, and he accepted. (Compl. ¶ 25.)

On July 11, 2011, Doering and Metcast filed this lawsuit against Rosler, seeking a declaratory judgment that the noncompete provision in the Agreement is void and unenforceable. (Compl. ¶ 31.) Plaintiffs request a declaration that Doering is entitled to continue employment with Metcast. (Compl. ¶ 32.) At the time the Complaint was filed, Doering was living in Waukesha County, Wisconsin. (Compl. ¶ 2.)

Rosler removed the case to this court based upon diversity jurisdiction. Rosler has asked that the action be dismissed based on the forum selection clause in Doering's

Agreement. A separate lawsuit was filed in Calhoun County, Michigan, against Doering and three other former Rosler employees who were hired by Metcast. (Huitink Decl. Ex. 1.)

Under Federal Rule of Civil Procedure 12(b)(3), a forum selection clause can be enforced through a motion to dismiss the complaint for lack of venue. *Muzumdar v. Wellness Int'l Network, Ltd.,* 438 F.3d 759, 760 (7th Cir. 2006); *see Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995). The plaintiff bears the burden of establishing that venue is proper. *Hanyuan Dong v. Garcia,* 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008). The court may examine facts outside of the complaint, while taking all the allegations in the complaint as true and drawing all reasonable inferences in favor of plaintiff. *Id.*

Under federal law, a forum selection clause is presumed to be valid and should be enforced unless shown to be unreasonable or unjust, the result of fraud or overreaching, or in contravention of "a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Similarly, under Wisconsin law, a contractual forum selection clause is presumptively valid. *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.,* 2006 WI App 187, ¶ 22, 296 Wis. 2d 273, ¶ 22, 722 N.W.2d 633, ¶ 22.[1] "When parties have previously agreed that litigation should be conducted in a particular forum there is a strong presumption favoring venue in that forum, unless enforcement is shown to be unreasonable under the circumstances." *Id.* Enforcement may be unreasonable if the

---

[1] In *Abbott Laboratories v. Takeda Pharmaceutical Co.*, 476 F.3d 421 423 (7th Cir. 2007), the Seventh Circuit suggested that in a diversity case the validity of the forum selection clause should be determined by reference to the law of the jurisdiction whose law governs the rest of the contract. However, although the contract in the present case invokes Michigan law, the parties discuss only federal or Wisconsin law. Neither party cites to Michigan law or suggests that it differs from federal Michigan law as to the validity of forum selection clauses. The court therefore will not refer to Michigan law, either.

4

forum selection clause contravenes strong public policy. *See Beilfuss v. Huffy Corp.*, 2004 WI App. 118, ¶ 1, 274 Wis. 2d 500, ¶ 1, 685 N.W.2d 373, ¶ 1.

The Seventh Circuit has held that "where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Muzumdar,* 438 F. 3d at 762. The Seventh Circuit has upheld forum selection provisions when they are written in mandatory terms covering jurisdiction and venue. *Fi-Med Mgmt. Inc. v. Clemco Med. Inc.*, No. 11-C-155, 2011 WL 2133345, *2 (E.D. Wis. May 27, 2011).

Here, the forum selection clause of the Agreement is written in clear, mandatory terms, stating that "any dispute arising under this Agreement shall be filed, heard, and decided" in either the state court in Calhoun County or federal court in the Western District of Michigan. The forum selection clause is unambiguous and expresses the intent of the parties, and it is undisputed that Doering signed it. Thus, unless there is some other reason to avoid application of the provision, the motion to dismiss for improper venue must be granted as to Doering's claims.

Doering suggests that the forum selection clause is unreasonable because he signed it right out of school; Rosler was his first employer. (*See* Doc. 10 at 3 n.1.) But that fact alone does not support rejection of the clause. Presumably, Doering was a knowing and intelligent adult who had graduated from a university in Germany.

Next, Doering submits that forcing him to litigate in Michigan would deprive him of his day in court because of grave inconvenience or oppression if he is forced to travel to

5

Case 2:11-cv-00813-CNC   Filed 08/23/12   Page 5 of 11   Document 19

Michigan. (*See* Doc. 10 at 3 n.1.) However, all things considered, Michigan is not far from Wisconsin, and Doering used to commute from Maryland to western Michigan—likely a farther distance. In addition, Doering is a defendant in a lawsuit in Michigan already. Moreover, it is not unreasonable for a corporation to draft an employment contract requiring litigation to occur in its home state. *Beilfuss*, 2004 WI App 118, ¶ 8.

Plaintiffs' primary argument is that the forum selection clause is void because it contravenes the strong public policy of Wisconsin regarding covenants not to compete. Wisconsin Statute § 103.465 permits covenants not to compete "if the restrictions imposed are reasonably necessary for the protection of the employer." But any covenant "imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint." *Id.* Michigan law, on the other hand, provides that a noncompetition agreement is permissible if "reasonable as to its duration, geographical area, and the type of employment or line of business." But if unreasonable, the noncompetition provision may be limited by the court to render it reasonable and then enforced as limited. Mich. Comp. Laws § 445.774a(1).

Under Wisconsin law, "the validity of the choice of law provision is a precondition to determining the enforceability of the forum selection provision." *Id.* ¶ 13. Though parties may expressly agree that the law of a particular jurisdiction will control their contractual disputes, they cannot do so "at the expense of important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded." *Bush v. Nat'l Sch. Studios, Inc.*, 139 Wis. 2d 635, 642, 407 N.W.2d 883, 886 (1987).

In contract cases, Wisconsin choice of law principles point toward the law of the state with which the contract has the most significant relationship. *Jafari v. Wynn Las Vegas, LLC*, 569 F.3d 644, 649 (7th Cir. 2009); *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co.*, 544 F.3d 752, 759 (7th Cir. 2008); *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 26, 251 Wis. 2d 561, ¶ 26, 641 N.W.2d 662, ¶ 26. The law of the forum presumptively applies unless it is clear that nonforum contacts are of greater significance. *Jafari*, 569 F.3d at 649. Relevant contacts include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domiciles, places of incorporation and places of business of the parties. *Id.*; *Rockwell*, 544 F.3d at 759. Quantity is not decisive; instead, the court must determine which contacts are most significant and where those significant contacts are found. *Rockwell*, 544 F.3d at 759.

The Agreement was negotiated and signed in Michigan and governed the relationship between a Michigan corporation and a then-Michigan citizen concerning employment that occurred in Michigan. The place of business and incorporation of defendant is in Michigan. During the contract period, Doering's place of residence was Michigan or Maryland. It is clear that the Agreement's most significant contacts are with Michigan; they far outweigh contacts with Wisconsin. In fact, contacts with Wisconsin are minimal—the only tie to this jurisdiction is that Doering moved here to work after his employment at Rosler ended. Even if there were no choice of law provision selecting Michigan law, that state's law would apply. Thus, the choice of law provision was valid.

In this way, the present case is similar to *Extrusion Dies Industries, LLC v. Cloeren Inc.*, No. 08-cv-323-slc, 2008 WL 4401219 (W.D. Wis. 2008), in which the district court found that Texas law applied to a noncompete agreement stating that it would be governed by Texas law.  The employee, Oliver, worked in Texas for eighteen years and lived in Texas or Colorado while doing so.  Just weeks after the employee accepted subsequent employment in Wisconsin and moved to Wisconsin, he sued the Texas former employer, Cloeren, over a noncompete agreement.  The court found that Texas law applied; the choice of law provision was valid.

> [T]wo to four weeks in Wisconsin as EDI's newest VP cannot overcome almost eighteen years in Texas with Cloeren.  At the time Oliver and Cloeren executed their first Secrecy Agreement, neither party possibly could have conceived that this agreement would be governed by the law of any other state. . . . Texas was the place of contracting, the place of performance, the place of negotiation, the location of the subject matter of the contract and the residences and places of business of the parties.

*Id.* at *3.  Here, plaintiffs attempt to distinguish *Extrusion Dies* by pointing out that Oliver worked at Cloeren for eighteen years while Doering worked at Rosler for four years and some months.  But that attempt to distinguish *Extrusion Dies* is ineffective.  For almost five years Michigan parties governed their relationship by a contract negotiated and executed in Michigan.  The application of Michigan law is most appropriate.

Because Michigan law would apply regardless of the choice of law provision, the choice of forum should be deemed valid as well.  *See Bush*, 139 Wis. 2d at 642 (stating that the parties cannot choose a certain state's law at the expense of public policy "of a state whose law would be applicable" otherwise).  But even if Wisconsin public policy could trump a forum selection clause naming a forum in Michigan when that state's law will

8

validly apply, Wisconsin interests and policy would have to greatly outweigh Michigan's, and that is not the case here.

Plaintiffs point to *Beilfuss* to support their position that the Wisconsin public policy regarding noncompete provisions should outweigh a forum selection clause from a state less protective of the employee. However, *Beilfuss* is distinguishable. There, a Wisconsin resident was hired as a sales manager for an Ohio corporation and signed a choice of law and forum selection provision selecting Ohio as the exclusive forum for resolution of disputes. But the employee continued living in Wisconsin during his employment. In *Beilfuss* Wisconsin had far more interest from a public policy standpoint than it does in this case concerning an agreement created in Michigan between people in Michigan concerning employment in Michigan. Moreover, *Beilfuss* is a Wisconsin Court of Appeals opinion and cannot be read to contradict the Wisconsin Supreme Court's acceptance in *Bush* that contractual choice of law provisions are often acceptable and are qualified only when contravening public policy interests of *a state whose law would otherwise apply*. *See Bush*, 139 Wis. 2d at 642.

Moreover, the *Beilfuss* court noted the benefit of having a court familiar with the applicable law apply that law rather than a court in another forum doing so. *See* 2004 WI App 118, ¶ 18. In *Beilfuss* the better court was in Wisconsin because Wisconsin law was to apply. Here, the better court to apply Michigan law is a court in Michigan.

Wisconsin public policy does not overcome the presumption that the forum selection clause is valid and should be governed by Michigan law. As noted by the *Extrusion Dies* court, Wisconsin enforces reasonable covenants not to compete. 2008 WL 4401219,

9

at *4. On that point, Michigan law is similar. It is not as if Wisconsin bars covenants to compete; instead, there is a different result in the event a covenant is unreasonable (invalidation versus reformation). Here, the public policy behind such a difference is not enough to invalidate the forum selection clause.

For all of these reasons, Doering's claims must be dismissed. However, the forum selection clause does not bind Metcalf. Metcalf was not a party to the Agreement. Nevertheless, under Fed. R. Civ. P. 19(a)(1), a party must be joined if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (I) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed R. Civ. P. 19(a).

The underlying purpose of the rule is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 481 (7th Cir. 2001). Determining joinder under Rule 19 is a two-step inquiry. First, the court must determine whether the party is a necessary party. Second, if the court concludes that the party should be included in the action but cannot be, it must also decide whether litigation can proceed in the party's absence. *Id*. If there is no way to structure judgment in absence of the party that will protect both the rights of the party and the existing litigants then the action is subject to dismissal. *Id.*

Here, Doering is a necessary and indispensable party to Metcast's claim and the case cannot proceed in his absence. The case relates solely to the enforceability of

10

Doering's Agreement, to which Metcast is not a party. Doering shares the same claim for relief as Metcast and his ability to protect his interest will be impaired if a judgment about the enforceability of the Agreement is made in his absence. Litigation of Doering's contractual rights with defendant in Michigan, as well as litigation of the same rights here by Metcast would expose both parties to inconsistent judgments and constitute a waste of judicial resources. Furthermore, Metcast has relief in another forum for the claim, as it can seek to litigate in Michigan in the pending Michigan lawsuit between Rosler, Doering and the other defendants or file suit there. Therefore,

IT IS ORDERED that Rosler's motion to dismiss (Doc. 4) is granted and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 23rd day of August, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE